UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOSEPH PIGNATELLI,<br>individually and on behalf of<br>all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>MSP RECOVERY, INC. F/K/A<br>LIONHEART ACQUISITION CORP. II,<br>JOHN H. RUIZ, CALVIN HAMSTRA,<br>RICARDO RIVERA, OPHIR<br>STERNBERG, JAMES ANDERSON,<br>THOMAS BYRNE, THOMAS<br>HAWKINS, ROGER MELTZER,<br>ALEXANDRA PLASENCIA, FRANK<br>C. QUESADA, BEATRIZ<br>ASSAPIMONWAIT, and MICHAEL F.<br>ARRIGO,<br><br>          Defendants. | Case No. 1:23-cv-23224-<br>CMA |

**DEFENDANTS' MOTION FOR PLAINTIFF'S COUNSEL AND THE
ROSEN LAW FIRM TO  SHOW CAUSE AND PROVIDE SUBSTANTIAL
COMPETENT EVIDENCE TO THIS COURT THAT THE PLAINTIFF
PIGNATELLI OR ANY PUTATIVE CLASS MEMBER WAS NOT
SOLICITED IN VIOLATION OF
APPLICABLE BAR AND LOCAL RULES**

Defendants MSP Recovery, Inc. f/k/a Lionheart Acquisition Corp. II, John

H. Ruiz, Ricardo Rivera, Alexandra Plasencia, and Frank C. Quesada,

(collectively, the "Defendants"), on a limited appearance, hereby move the Court

for entry of an Order to Show Cause why Plaintiff's Counsel, the Rosen Law Firm,

P.A. ("Rosen"), should be permitted to continue representing Joseph Pignatelli and

1

the putative class members in light of the clear indicia of improper client

solicitation surrounding the filing of this lawsuit.

## <u>PRELIMINARY STATEMENT & BACKGROUND</u>

This lawsuit is the product of a concerted advertising campaign launched by

Rosen a mere three weeks ago. The advertising campaign violates multiple bar

rules and is a clear violation of the rules protecting the public from illegal

advertising.  In short, the Rosen Law Firm formulated a lawsuit and specific desire

to sue the Defendants and went fishing for clients to make that happen.

Following two salacious, sensationalized news stories regarding one of MSP

Recovery, Inc.'s founders, published by the Miami Herald on July 31st and August

2nd, Rosen immediately issued advertisements announcing its "investigation of

potential securities claims on behalf of shareholders of MSP Recovery, Inc." and

actively "encouraging" shareholders to join their prospective class action. *See* Ex.

A, "Rosen, A Leading Investor Rights Law Firm, Encourages MSP Recovery, Inc.

f/k/a Lionheart Acquisition Corp. II Investors with Losses to Inquire About

Securities Class Action Investigation – LIFW", PR Newswire, August 5, 2023.

Rosen's initial press releases were picked up and circulated by a number of legal

reporting and advertising platforms, as reflected by Composite Exhibit B. These

solicitations were targeted and none of them could have been approved by the

Florida Bar prior to dissemination because (1) the advertisements appeared

*immediately* after the aforementioned news articles, and (2) the advertisement has content that violates the Florida Bar rules.  On August 28th, the Florida Bar confirmed that neither Rosen nor Laurence Rosen, individually, has sought or received approval for an advertisement *since 2010. See* Ex. C, Declaration of Marcus Davide.

Rosen, though, did not stop with press releases. In connection with its efforts, Rosen went so far as to prepare a form Complaint *before it ever had a client*. Rosen then posted that plaintiff-less Complaint—which is nearly identical to that now on file—on its website in a plain effort to solicit its desired claimant. *See* MSP Recovery, Inc. f/k/a Lionheart Acquisition Corp. II, The Rosen Law Firm, View Complaint, https://rosenlegal.com/case/msp-recovery-inc-f-k-a-lionheart-acquisition-corp-ii/ (last visited Aug. 27, 2023). It appears that Rosen placed that complaint and ad into the stream of commerce to secure a plaintiff that it, to that point, had not been able to find. Rosen got what it wanted. But in doing so it also violated the Florida Bar Rules and this Court's holdings on improper solicitation.

The improper client solicitations continued beyond Rosen's initial rounds of press releases. On August 23, 2023, immediately after filing its shotgun complaint in this case, Rosen launched another solicitation targeted at putative class members. *See* Ex. B at 12-13, Equity Alert: Rosen Law Firm Files Securities Class Action Lawsuit on Behalf of MSP Recovery, Inc. f/k/a Lionheart Acquisition

Corp. II Investors -LIFW, Aug. 23, 2023, also available at

https://www.businesswire.com/news/home/20230823026186/en/EQUITY-
ALERT-Rosen-Law-Firm-Files-Securities-Class-Action-Lawsuit-on-Behalf-of-
MSP-Recovery-Inc.-fka-Lionheart-Acquisition-Corp.-II-Investors-%E2%80%93-
LIFW (law visited Aug. 28, 2023). That advertisement, like all of its others,

materially misled its target audience: MSP Recovery, Inc. shareholders. A top to

bottom review of Rosen's solicitations discloses multiple violations of Florida Bar

Rules 4-7.13 and 4-7.14 governing attorney advertisements. It is important to note

that the Bar *requires* submission and approval of advertisements. One of the many

reasons for doing so is to make sure that the content complies with the Rules

Regulating the Florida Bar.

A little context, and the unsubstantiated allegations of Plaintiff's Complaint,

show the motivation behind Rosen's scramble to find a class representative. On

August 10, 2023, MSP Recovery, Inc. was sued by Cano Health, LLC, one of its

long-time Medicare Advantage assignors.[1] Cano, itself a publicly traded company

(NYSE: CANO), has endured well and publicly documented internal strife and

financial concerns, which recently led to the ouster of its original CEO (who

negotiated the company's agreements with MSP). Cano and its new leadership

---

[1] *Cano Health, LLC v. MSP Recovery, Inc.*, Case No. 23-021166-CA-15, 11th Judicial Circuit, Miami-Dade County, Florida.

fabricated a story about MSP Recovery as part of the vilification of Cano's former leadership.  Within days of the suit's being filed, MSP Recovery, Inc. filed a Verified Motion to Stike the Complaint as a Sham because, as laid out therein, Cano's allegations are *demonstrably false*. A copy of that motion is attached hereto as Exhibit D.

Without regard for the veracity of Cano's lawsuit, and likely cognizant of the first to file rule, Rosen sought to bootstrap its own investor class action as soon as possible. Instead of conducting an investigation before filing suit, Rosen simply relied on unsubstantiated news reports that are the subject of a pending Motion to Strike as a Sham in state court. In its haste, Rosen wrongfully solicited plaintiffs and made false, misleading, and unsupportable representations about MSP Recovery, Inc. Rosen's disregard for the Florida Bar Rules, which are incorporated to the Local Rules of this Court, warrants close scrutiny.  Plaintiff's counsel should account for exactly how he came to represent Mr. Pignatelli. And Rosen's conduct should act as a bar against its representing any other potential plaintiffs that might seek to join this action.

## ARGUMENT

### I.    Improper Client Solicitation Warrants Sanctions

"A federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32,

43 (1991). A court's decision as to "whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996). The Rules Regulating the Florida Bar ("Florida Rules") contain an anti-solicitation provision which mandates that "a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, *in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain*." R. Reg. Fla. Bar 4-7.4(a) (emphasis added). Further, and importantly, the Southern District of Florida's Local Rules ("Local Rules") *subject attorneys to discipline for violating the Local Rules or Florida Rules*. S.D. Fla. L.R. 11.1(c). Those measures include disbarment, monetary sanctions, or "any other sanction the Court may deem appropriate." S.D. Fla. L.R. 6(b)(2)(B).

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S. Ct. 2193 (1981), the Supreme Court noted that the potential abuses associated with collective actions (like class actions) include, "heightened susceptibilities of nonparty class members to solicitation amounting to barratry as well as the increased opportunities of parties and counsel to 'drum up' participation in the proceeding." *Id.* at 101, n.12 (quoting *Waldo v. Lakeshore Estates, Inc.*, 433 F. Supp. 782, 790 (E.D. La. 1977)). To address such abuses, this Court possesses both the duty and authority to limit

and address unapproved communications. *Id.* District courts are afforded this power because they have a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Hall v. Burk*, Case No. 3:01-cv-2487, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002).

Against that backdrop, in *Hamm v. TBC Corp.*, the Eleventh Circuit affirmed sanctions against plaintiff's counsel in a collective action for pre-certification communications that violated the Florida Rule's prohibitions on client solicitation. 345 Fed. Appx. 406, 410 (11th Cir. 2009). There, the plaintiff's counsel was barred from representing any opt-in plaintiffs, was referred to the Florida Bar for possible future action, and ordered to pay fees and costs associated with the defendants' motion for sanctions where the firm's administrative assistant contacted two eventual plaintiffs "in order to conduct a due diligence investigation." *Id.* at 408-410. The sanctions were upheld as "ensuring that counsel acts ethically in this litigation" and stopped "unethically soliciting clients." *Id.* at 410; *see also Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) (ruling that ex parte contact constitutes unethical solicitation of clients if purpose or predictable effect is to influence an individual's participation in a class).

The solicitation of potential class members to join this litigation is prohibited. Full stop. The court retains authority to prevent these types or any other types of unapproved communications. Rosen's campaign to solicit clients started

August 5th and continued to escalate after the filing of this action. Rosen's

advertisements expressly encouraged potential plaintiffs to contact and retain them;

encouraged plaintiffs to join Rosen's developing class action; and openly

encouraged potential plaintiffs to "be wise" in selecting "qualified counsel" with

its "track record of success." *See* Ex. A. Rosen discouraged its target audience

from communicating with other "firms issuing notices" since they often "do not

have comparable experience, resources, or any meaningful peer recognition" and

"do not actually litigate securities class actions." *Id.* Rosen's efforts to entice a

potential plaintiff (for its own pecuniary gain) culminated with posting a plaintiff-

less complaint against MSP Recovery, Inc. on its website for prospective clients to

view.

Rosen's solicitation tactics crossed the line, and corrective action is

appropriate. As in *Hamm*, this Court should examine how Rosen came to represent

the named Plaintiff here, and place appropriate guardrails to ensure plaintiff's

counsel "acts ethically in this litigation." *Hamm*, 345 Fed. Appx. At 410.

## II.   Rosen's Unapproved Communications Violate the Florida Rules Governing Attorney Advertisements

Rosen's press releases are advertisements. In fact, each of them actually

discloses—albeit as an imperceptible afterthought—that it is intended to be an

attorney advertisement. *See* Exs. A and B. Importantly, Subchapter 4-7 of the

Rules Regulating the Florida Bar, which are commonly referred to as the

8

"advertising rules" apply to lawyer advertisements "in all forms of communication in any print *or electronic forum.*" R. Reg. Fla. Bar 4-7.11(a). Digital advertising must follow the same rules as more tangible forms of advertising. And digital advertisements must be submitted for review for compliance with the advertising rules just like any other method or mode of advertising. R. Reg. Fla. Bar 4-7.19. Rosen's purported news blasts and press releases give rise to numerous violations.

First, the Florida Rules ensure that potential clients are put on notice that what they are looking at is an attorney advertisement by requiring that the message prominently identify itself as just that. R. Reg. Fla. Bar 4-7.12. Rosen's approach ignores that rule. While noting that its press releases are "Attorney Advertising," that disclosure is so buried at the end of a digital ad as to be imperceptible. Further, there is no such disclosure associated with the form Complaint posted to entice/solicit a class representative. *See* MSP Recovery, Inc. f/k/a Lionheart Acquisition Corp. II, https://rosenlegal.com/case/msp-recovery-inc-f-k-a-lionheart-acquisition-corp-ii/ (last visited Aug. 28, 2023).

Next, Florida Rule 4-7.13 prohibits deceptive or inherently misleading advertising. "An advertisement is deceptive or inherently misleading if it: (1) contains a material statement that is factually or legally inaccurate; (2) omits information that is necessary to prevent the information supplied from being misleading; or (3) implies the existence of a material nonexistent fact." R. Reg.

Fla. Bar 4-7.13(a). Rosen's most recent, August 23rd advertisement (meant to attract more plaintiffs, including class representatives) checks all three boxes.

Rosen's advertisement contained multiple false and legally inaccurate statements, including, but not limited to, that MSP Recovery "was unable to afford the assigned claims on which it depends, and defrauded a major healthcare provider that sold or assigned it its claims;" "the Registration Statement contained various false or misleading statements and was negligently prepared"; and that the "Proxy contained false or misleading statements." Comp. Ex. B, Aug. 23, 2023 Advertisement.[2] To be clear, MSP Recovery has not defrauded or mislead anyone, and certainly has not defrauded a major healthcare provider. *See* Exs. D and E.

Rosen's advertisement omits critical facts and fails to disclose the paper thin and uninvestigated nature of the form complaint it prepared to attract a client. Rosen's contention that MSP Recovery made misleading statements in the Proxy and other documents *hinges and is based entirely on the Cano lawsuit*. *See, e.g.,* Compl., ECF No. 1 at ¶¶ 37, 39, 41, 43, 45, 47, 49, 53, and 137-151. Rosen did nothing to investigate that lawsuit. And Rosen does not disclose or even suggest that MSP Recovery swiftly met that lawsuit with a verified motion undermining the legitimacy of its allegations. *See* Ex. D; *see also* Ex. E (MSP subsequently filed

---

[2] Also available at https://www.businesswire.com/news/home/20230823026186/en/EQUITY-ALERT-Rosen-Law-Firm-Files-Securities-Class-Action-Lawsuit-on-Behalf-of-MSP-Recovery-Inc.-fka-Lionheart-Acquisition-Corp.-II-Investors-%E2%80%93-LIFW (last visited Aug. 28, 2023).

another Motion to Strike expressly addressing baseless and defamatory claims made by Cano which appear calculated to impact MSP's stock).

Instead, the Complaint references an alleged failure or inability to pay Cano more than two dozen times. *See, generally,* ECF. No. 1. As MSP's verified filings show, that is simply untrue. Plaintiff relies on the bald allegations raised in the Cano Lawsuit, which are unsubstantiated hearsay, as though they were a final adjudication. They are not. Recycling another litigant's unproven assertions is reckless. Broadcasting those allegations as material facts through online advertisements in order to drum up new plaintiffs is misleading and prohibited (for good reason).

Third, Florida Rule 4-7.13 proscribes "advertisements that contain . . . statements or information that a prospective client can reasonably interpret as a prediction or guaranty of success or specific results." R. Reg. Fla. Bar 4-7.13(b)(1). But Rosen invites prospective clients to make that leap. For example, in its August 5 press release, Rosen states that MSP Recovery has received "subpoenas from federal prosecutors" just before advertising that it "achieved the largest ever securities class action settlement against a Chinese Company" and that it recovery over $438 million for investors "in 2019 alone." *See* Ex. A. In its August 23, 2023 advertisement, Rosen again emphasizes that it has "secured hundreds of millions of dollars for investors."  Against the backdrop of those promises, Rosen posted a

draft complaint awaiting only the addition of a single plaintiff's name. Its errors are patent.

Fourth, the Rule 4-7.13 also prohibits "comparisons of lawyers." R. Reg. Fla. Bar 4-7.13(b)(3). Nevertheless, Rosen drew hypothetical comparisons between its firm and others in order to solicit clients and discourage communications with other potential firms. Turning again to the August 5 advertisement, Rosen suggests that other "firms issuing notices do not have comparable experience or resources" and "do not actually litigate securities class actions." Another deceptive practice.

The Florida Supreme Court has reprimanded and sanctioned lawyers where advertisements contained inaccurate and erroneous claims meant to induce prospective clients to hire them. *See Fla. Bar v. Letwin*, 70 So. 3d 578, 580-84 (Fla. 2011) (imposing one year suspension where attorney sent letter improperly soliciting part time teachers to join a purported class action and the letter contained "inaccuracies and statements of fact that induced approximately 50 clients to retain respondent's legal services."). While this case is still in its earliest stages, Rosen's path to the starting gate raises serious questions. The importance of those issues warrants immediate attention to place appropriate limitations on Rosen's participation in this case and safeguard against unethical behavior going forward.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and enter an

Order to Show Cause requiring that the Rosen Law Firm P.A. provide substantial competent evidence that the named Plaintiff in this action was not improperly solicited, place appropriate limitations Rosen's representation of other potential plaintiffs in this action, and award Defendants their fees and costs associated with this Motion.

Respectfully submitted on this 28th day of August, 2023.

**ARMAS BERTRAN ZINCONE**
4960 SW 72nd Ave, Suite 206
Miami, FL 33155
Tel: (305) 661-2021

*/s/ Francesco Zincone*
Francesco Zincone
fzincone@armaslaw.com
*Counsel for Defendants*

## CERTIFICATE OF GOOD FAITH CONFERENCE

On August 25, 2023, the Defendants provided Plaintiff's counsel with a letter detailing the violations underlying this Motion. And, in furtherance of the obligations under Local Rule 7.1, the undersigned met and conferred with counsel for Plaintiff via email on August 28, 2023 in an effort to resolve this Motion. Counsel for Plaintiff advised that he is willing to dismiss this action, without

prejudice, with each party to bear its own costs. Defendants, however, cannot agree to the additional conditions placed upon the dismissal or waive any rights arising from the filing of this action.

/s/ Francesco Zincone
Francesco Zincone

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk via CM/ECF this 28th day of August, 2023, and was served on all counsel of record via CM/ECF email notification.

/s/ Francesco Zincone
Francesco Zincone