**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq.
Fla. Bar No. 0182877
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JOSEPH PIGNATELLI, Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>MSP RECOVERY, INC. F/K/A LIONHEART ACQUISITION CORP. II, JOHN H. RUIZ, CALVIN HAMSTRA, RICARDO RIVERA, OPHIR STERNBERG, JAMES ANDERSON, THOMAS BYRNE, THOMAS HAWKINS, ROGER MELTZER, ALEXANDRA PLASENCIA, FRANK C. QUESADA, BEATRIZ ASSAPIMONWAIT, and MICHAEL F. ARRIGO,<br><br>     Defendants. | **Case No: 23-23224-CIV-ALTONAGA/Damian** |

**OPPOSITION TO DEFENDANTS' MOTION FOR PLAINTIFF'S COUNSEL AND THE ROSEN LAW FIRM TO SHOW CAUSE AND PROVIDE SUBSTANTIAL COMPETENT EVIDENCE TO THIS COURT THAT THE PLAINTIFF PIGNATELLI OR ANY PUTATIVE CLASS MEMBER WAS NOT SOLICITED IN VIOLATION OF APPLICABLE BAR AND LOCAL RULES**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND .................................................................................................... 2

III.   ARGUMENT .......................................................................................................... 6

  A.   Defendants Fail to Identify Any Evidence of Client Solicitation ...................................6

  B.   Defendants Fail to Show that Rosen Law Firm's Advertising was Misleading or Deceptive
       ................................................................................................................................8

    1.   The Contents of the August 23, 2023 Press Release Were Mandated by Federal Law ... 9

    2.   The Advertisements Were Not Misleading................................................................. 10

    3.   The Press Releases Contained no Guarantee of Success ............................................. 16

    4.   The Press Releases Contained no Improper Comparisons ........................................... 17

    5.   It was Unnecessary to Obtain Pre Approval for the Advertising................................. 18

  C.   The Proposed Relief Defendants Seek is Unwarranted ............................................. 19

  D.   Defendants Failed to Confer in Good Faith ............................................................ 20

IV.   Conclusion ............................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Arkansas Tchr. Ret. Sys. V. State St. Bank & Tr. Co.*,
512 F. Supp. 3d 196 (D. Mass. 2020) ...................................................................... 18

*Armstrong v. United Servs. Auto. Ass'n*,
No. 8:06-CV-1439-T-30TBM, 2006 WL 8440246 (M.D. Fla. Nov. 9, 2006).................... 9, 19

*Borgner v. Brooks*,
284 F.3d 1204 (11th Cir. 2002)............................................................................... 17

*Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*,
950 So. 2d 380 (Fla. 2007)..................................................................................... 9

*Gulf Oil Co. v. Bernard*,
452 U.S. 89, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981) .............................................. 7

*Hamm v. TBC Corp.*,
345 F. App'x 406 (11th Cir. 2009) .................................................................. 6, 7, 19

*Harrell v. Fla. Bar*,
915 F. Supp. 2d 1285 (M.D. Fla. 2011) ................................................................... 10

*Hilton v. Brooks Cnty. Sch. Dist.*,
No. 7:20-CV-227 (HL), 2022 WL 4657701 (M.D. Ga. Sept. 30, 2022)............................ 7

*HSH Nordbank AG v. RBS Holdings USA Inc.*,
No. 13 CIV. 3303 PGG, 2015 WL 1307189 (S.D.N.Y. Mar. 23, 2015)............................ 13

*Impervious Paint Indus., Inc. v. Ashland Oil*,
508 F. Supp. 720 (W.D. Ky. 1981) .......................................................................... 7

*In re Adaptive Broadband Sec. Litig.*,
No. C 01-1092 SC, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002)...................................... 12

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)....................................................................... 11

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,
851 F. Supp. 2d 746 (S.D.N.Y. 2012)....................................................................... 13

*In re Catalina Mktg. Corp. Sec. Litig.*,
390 F. Supp. 2d 1110 (M.D. Fla. 2005) .................................................................... 11

ii

*In re Mercator Software, Inc. Sec. Litig.*,
   161 F. Supp. 2d 143 (D. Conn. 2001) ...................................................... 12

*In re MicroStrategy, Inc. Sec. Litig.*,
   115 F. Supp. 2d 620 (E.D. Va. 2000) ...................................................... 11

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ............................................................ 11

*In re Paincare Holdings Sec. Litig.*,
   541 F. Supp. 2d 1283 (M.D. Fla. 2008) ................................................. 11

*In re Sonus Networks, Inc. Sec. Litig.*,
   No. CIV.A.04-10294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006) ........................... 11

*Kaltman v. Key Energy Servs., Inc.*,
   447 F. Supp. 2d 648 (W.D. Tex. 2006) ................................................... 11

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*,
   639 So. 2d 606 (Fla. 1994) ..................................................................... 13

*Managed Care Sols., Inc. v. Essent Healthcare, Inc.*,
   736 F. Supp. 2d 1317 (S.D. Fla. 2010) .................................................... 8

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
   No. CV1702525ABAFMX, 2021 WL 3615905 (C.D. Cal. Aug. 12, 2021) ........................ 16

*Mason v. Fla. Bar*,
   208 F.3d 952 (11th Cir. 2000) .............................................................. 17

*MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*,
   No. 619CV00211MADTWD, 2019 WL 4222654 (N.D.N.Y. Sept. 5, 2019) ...................... 15

*MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*,
   No. 18-21626-CIV, 2018 WL 5112998 (S.D. Fla. Oct. 19, 2018) ............................ 15, 16

*Ohralik v. Ohio State Bar Ass'n*,
   436 U.S. 447, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978) ............................... 7

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .................... 12

*Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*,
   496 U.S. 91, 110 S. Ct. 2281, 110 L. Ed. 2d 83 (1990) ............................... 17

*Rubenstein v. Fla. Bar*,
    72 F. Supp. 3d 1298 (S.D. Fla. 2014)...................................................................... 16

*S.E.C. v. Koenig*,
    No. 02 C 2180, 2007 WL 1074901 (N.D. Ill. Apr. 5, 2007)..................................... 11

*Sanchez v. Arrival SA*,
    No. 22-CV-172 (DG), 2022 WL 20539729 (E.D.N.Y. Apr. 15, 2022) ..................... 12

*Searcy v. Fla. Bar*,
    140 F. Supp. 3d 1290 (N.D. Fla. 2015) ................................................................... 16

*Shapero v. Kentucky Bar Ass'n*,
    486 U.S. 466, 108 S. Ct. 1916, 100 L. Ed. 2d 475 (1988) ........................................ 7

*Shapiro v. All. MMA, Inc.*,
    No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ........... 12

*Strougo v. Barclays PLC*,
    105 F. Supp. 3d 330 (S.D.N.Y. 2015)...................................................................... 13

*The Fla. Bar v. Letwin*,
    70 So. 3d 578 (Fla. 2011) .................................................................................. 14, 15

*Thomas v. Magnachip Semiconductor Corp.*,
    167 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................... 11

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
    471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 2d 652 (1985) ............................. 7, 10, 19

*Zuckerman v. Smart Choice Auto. Group, Inc.*,
    2000 WL 33996254 (M.D. Fla. Aug. 29, 2000) ...................................................... 11

## **Statutes**

15 U.S. Code § 78u–4(a)......................................................................................... 9, 13

## **Rules**

FL. Bar 4-7 ................................................................................................ 6, 8, 16, 17, 18

## **Regulations**

17 C.F.R. § 210.4-01(a)(1)...................................................................................... 11

## I.   __INTRODUCTION__

MSP Recovery, Inc. ("MSP"), founded by John Ruiz, is a newly-public claims recovery company that, in the first year and a half since going public, has failed to file its first 10-K annual report on time, issued a massive restatement eliminating half the value of its total assets and 90% of its current assets, admitted it has received subpoenas both from the SEC and a Federal Grand Jury, and has been accused of fraud by one of its largest clients.

Against this backdrop, The Rosen Law Firm, a nationally recognized law firm specializing in representing plaintiffs in securities fraud cases, issued a press release announcing to MSP investors that it was looking into the possibility of filing a lawsuit against MSP for violation of federal securities laws. After Joe Pignatelli retained The Rosen Law Firm on August 11, 2023, he filed the instant action. Declaration of Laurence Rosen ("Rosen Dec") ¶¶21-22.

In response, Defendants brought the instant motion for sanctions based on the false claim that The Rosen Law Firm improperly solicited its client. Defendants provide no evidence that any solicitation occurred, conflate solicitation with constitutionally protected attorney advertising, and repeatedly misrepresent Florida rules regarding attorney advertising and solicitation, citing in one instance a Florida regulation that has been removed from the books for ten years.

Defendants ask the court to conclude that The Rosen Law Firm's advertisements are misleading simply because Defendants deny *some* of the allegations in the complaint – though ignoring MSP's admission that it filed materially false financial statements and that it is the target of a criminal investigation and a SEC civil investigation of its financial disclosures.

If MSP's partial, unsupported denials were a basis for sanctions, it would make attorney advertising related to specific cases impossible, which would suppress constitutionally protected commercial speech. Defendants also complain that the press release was not submitted to the Florida Bar for preapproval, but the Handbook on Lawyer Advertising and Solicitation specifically exempts the press releases they seek sanctions for here from the pre-filing requirement. *See* The Florida Bar Standing Committee on Advertising, Twelfth Edition, Effective August 21, 2023, p. 2.

Defendants' motion lacks any merit and should be denied. Because, as set forth below, The Rosen Law Firm was not required to pre-file a press release before issuing it and because MSP has not shown any evidence of improper solicitation, nor any evidence that any press release was false or misleading, the Court should deny the motion for an Order to Show Cause and vacate

the hearing set for November 1.

## II.    <u>BACKGROUND</u>

MSP is a publicly traded company that, according to its registration statement filed on July 1, 2022, as amended on July 21, 2022, is in the business of recovering claims from Medicare Advantage, Medicaid, and private insurers. They do this through two lines of business: a claims recovery business where they acquire payment claims from assignors and seek to recover from the parties who are primarily responsible for the claim, and a "chase to pay" service where they assist healthcare providers to identify proper primary insurers in the first instance. Declaration of Laurence Rosen ("Rosen Dec.") Ex. 32, p. 53. The company went public via acquisition by a Special Purpose Acquisition Company, or SPAC, on May 24, 2022. To effectuate the SPAC acquisition, Lionheart Acquisition Corp. II issued a proxy statement soliciting votes for its May 18, 2022 special meeting, and a merger registration statement filed on November 11, 2021, amended several times through April 29, 2022, and became effective on May 2, 2022. Complaint ¶ 34, Rosen Dec. Ex. 30.  MSP conducted a secondary offering via a registration statement on July 1, 2022, which was amended on July 21, 2022 and became effective on August 5, 2022. Complaint ¶¶58-59, Rosen Dec. Ex. 32.

The proxy statement and second registration statement contained numerous statements regarding MSP's ability to purchase the assignment of claims from its assignor customers and its ability to recover on those claims. Complaint ¶¶38-48, 64-78, Rosen Dec. Exs. 32, 37.  Upon completion of the merger on May 24, 2022, MSP immediately lost over half of its value, dropping from a closing price of $10.78 on May 23, 2022 to $5.06 the following day. Rosen Dec. Ex. 31. MSP issued quarterly reports on August 12, 2022 (the 2Q22 Report) and November 10, 2022 (The 3Q22 Report). Complaint ¶¶86, 107, Rosen Dec. Exs. 35, 36.

MSP's balance sheet in its 2Q22 Report disclosed an "indemnification asset" of $719,413,000 which amounted to the vast majority of MSP's $795,780,000 in current assets, and a long term asset - MSP's Investment Rights to Claim Recovery Cash Flows - valued at $3,673,610,000 which together accounted for over half of MSP's total assets. Complaint ¶103, Rosen Dec. Ex. 35, p. 2. The 3Q22 Report stated that the indemnification asset was worth $752,510,000. Complaint ¶108, Rosen Dec. Ex. 36, p. 2. The 3Q22 Report again valued MSP's Investment Rights to Claim Recovery Cash Flows at $3,673,610,000. Rosen Dec. Ex. 36, p. 2.

On April 14, 2023, MSP announced via an 8-K disclosure that its financial statements for

the second and third quarters of 2022 must be restated and could no longer be relied upon. They admitted that MSP "identified errors in the accounting for the indemnification asset, various intangible assets and rights to cash flows and consolidation of an entity in connection with the Company's business combination." Complaint ¶115, Rosen Dec. Ex. 2.

On July 27, 2023, MSP belatedly issued its 10-K. It disclosed that it had issued the following restatement, correcting previous errors in its financial statements:

|  | | For the reporting period | | | |
|---|---|---|---|---|---|
| *(In thousands except per share amounts)* | | | June 30, 2022 | | |
|  | | As previously reported | Restatement Adjustments | | As Restated |
| **ASSETS** | | | | | |
| Current assets: | | | | | |
| Accounts receivable | $ | 901 | 17 | $ | 918 |
| Indemnification asset | | 719,413 | (719,413 ) | | - |
| **Total current assets** | | **795,780** | **(719,396 )** | | **76,384** |
| Deferred tax asset | | 857 | (857 ) | | - |
| Intangible assets, net | | 2,095,735 | 1,441,475 | | 3,537,210 |
| Investment in rights to claim recovery cash flows | | 3,673,610 | (3,673,610 ) | | - |
| **Total assets** | $ | **6,566,932** | $ **(2,952,388 )** | $ | **3,614,544** |
|  | | | | | |
| **Stockholders' Equity (Deficit):** | | | | | |
| Additional paid-in capital | $ | 187,269 | (60,479 ) | $ | 126,790 |
| Accumulated deficit | | (23,074 ) | (592 ) | | (23,666 ) |
| **Total Stockholders' Equity (Deficit)** | $ | **164,517** | $ **(61,071 )** | $ | **103,446** |
| Non-controlling interest | | 5,251,837 | (2,891,317 ) | | 2,360,520 |
| **Total equity** | $ | **5,416,354** | $ **(2,952,388 )** | $ | **2,463,966** |
| **Total liabilities and equity** | $ | **6,566,932** | $ **(2,952,388 )** | $ | **3,614,544** |

|  | | For the reporting period | | | |
|---|---|---|---|---|---|
|  | | | September 30, 2022 | | |
| *(In thousands except per share amounts)* | | As previously reported | Restatement Adjustments | | As Restated |
| **ASSETS** | | | | | |
| Current assets: | | | | | |
| Accounts receivable | $ | 7,525 | 138 | $ | 7,663 |
| Indemnification asset | | 752,510 | (752,510 ) | | - |
| **Total current assets** | | **820,157** | **(752,372 )** | | **67,785** |
| Deferred tax asset | | 857 | (857 ) | | - |
| Intangible assets, net | | 2,077,571 | 1,395,955 | | 3,473,526 |
| Investment in rights to claim recovery cash flows | | 3,673,610 | (3,673,610 ) | | - |
| **Total assets** | $ | **6,574,675** | $ **(3,030,884 )** | | **3,543,791** |

**Stockholders' Equity (Deficit):**

| | | | | | |
|---|---|---|---|---|---|
| Additional paid-in capital | $ | 201,656 | (66,689 ) | $ | 134,967 |
| Accumulated deficit | | (23,537 ) | (2,201 ) | | (25,738 ) |
| **Total Stockholders' Equity (Deficit)** | $ | **178,441** | $ (68,890 ) | | **109,551** |
| Non-controlling interest | | 5,213,812 | (2,961,994 ) | | 2,251,818 |
| **Total equity** | $ | **5,392,253** | $ (3,030,884 ) | $ | **2,361,369** |
| **Total liabilities and equity** | $ | **6,574,675** | $ (3,030,884 ) | | **3,543,791** |

Rosen Dec. Ex. 34, p. 90.

This restatement of the entire indemnification asset from $719.4 million to zero amounted to a restatement eliminating over 90% of MSP's current assets and together with the restatement of the entire "investment in rights to claim recovery cash flows" amounted to a reduction of more than 50% of MSP's total assets. The Restatement also increased MSP's net loss by $28,857,000, or 37%, for 2Q22, and by $78,496,000, or 290%, for 3Q22. Rosen Dec. Ex. 34, p. 91.

What MSP did not disclose at that time was that it was currently under Federal criminal and civil investigation. It was the Miami Herald that revealed that fact, publishing an article on July 30, 2023 reporting that the company was "the target of federal criminal and civil investigations". Rosen Dec. Ex. 4.

In response to the Miami Herald article, on August 1, 2023, MSP finally admitted that it had been under SEC investigation since August 11, 2022. MSP disclosed that it had received a second SEC subpoena dated March 1, 2023 requesting "documents relating to, among other matters, the business combination transaction with Lionheart Acquisition Corporation II consummated on May 23, 2022 and related matters." Complaint ¶139, Rosen Dec. Ex. 5. MSP also admitted that on May 10, 2023 the SEC issued a further request for documents in connection with MSP's financial statements for the second and third quarters of 2022 that required restatements. *Id.* And MSP also admitted that on March 10, 2023, the company received a grand jury subpoena from the United States Attorney's Office for the Southern District of Florida. *Id.*

Then, on August 10, Cano Health, a major assignor of claims to MSP, brought a lawsuit alleging that MSP fraudulently induced Cano to sell claims to MSP by misleading Cano about its financial condition. Complaint ¶141-142, Rosen Dec. Ex. 29. Cano stated that:

> Between 2021 and 2022, before this fraud came to light, Defendants fraudulently induced Cano Health to assign them claims with a face value of as much as several **billion** dollars. Cano Health did so in reliance upon fraudulent, unrealized promises by Defendants that they would pay Cano Health consideration of at least $66.75 million in the form of either cash or an issuance of securities. Defendants specifically represented that if they used securities to pay their debts to Cano

Health--which of course they did because, unbeknownst to Cano Health, Defendants' business was generating no income—then they would take all necessary steps to *ensure* those securities were registered within ten business days of issuance, and furthermore to make "true up" payments in cash or additional shares to Cano Health if those securities failed to maintain their market value.

But the deadlines for payment and registration have come and gone, and Defendants have materially breached their obligations to Cano Health by either (i) failing to attempt payment *at all*, or otherwise (ii) failing to register the securities issued to Cano Health, meaning Cano Health has given up a fortune in potential claims and received nothing in return but worthless, unsellable shares in a sham company. Unsurprisingly, recent news reporting has disclosed that Defendants are the subject of criminal and civil investigations by (i) the U.S. Attorney's Office for the Southern District of Florida, (ii) the Federal Bureau of Investigation, (iii) the Securities and Exchange Commission, and (iv) the Internal Revenue Service, and Defendants are also the defendants in numerous private lawsuits seeking to recover for unpaid debts and other misconduct.

Rosen Dec. Ex. 29, pp. 2-3.

As a result of these events, The Rosen Law Firm, and at least 13 other law firms, issued press releases notifying MSP investors that they were exploring whether to file a class action lawsuit against MSP for violation of federal securities laws, and inviting investors to join the prospective lawsuit. Rosen Dec. Exs. 7-8, 12-13.

Joseph Pignatelli, an MSP investor based in Connecticut, retained The Rosen Law Firm as counsel on August 11, 2023 and filed a lawsuit in this Court on August 23, 2023. Dkt. No. 1. Thereafter, in accordance with the requirements of the PSLRA, plaintiff filed a press release notifying investors in MSP of the pending lead plaintiff deadline. Rosen Ex. 14.  On Thursday, August 24, 2023, Judge Altonaga dismissed the initial complaint as a shotgun pleading because "[a]t the beginning of each count, Plaintiff 'repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.'" (ECF No. 4, at 2). The Court gave Mr. Pignatelli until Monday, August 28, 2023 to file an amended complaint.

On August 25, a Friday afternoon, Reynaldo Martinez of MSP Recovery Law Firm sent a letter to Laurence Rosen asserting that The Rosen Law Firm press releases violated Florida Bar Rules and "demand[ing] that your firm provide proof within the next five (5) days that this and any other release that has been disseminated seeking clients has received bar approval from the appropriate regulatory body."  Rosen Dec. ¶25, Ex 9. Mr. Martinez also claimed that the complaint violated Rule 11 because the facts on which it was based were untrue, though he never actually stated in his email which facts in the complaint were untrue. *Id.*

5

At 10:49 AM on August 28, 2023, attorney Francesco Zincone of Armas Bertran Pieri emailed Laurence Rosen stating that MSP intended to file an order to show cause regarding the purported improper solicitation of Mr. Pignatelli, unless he agreed to dismiss his complaint. Rosen Dec. ¶26, Ex. 10. Because Mr. Rosen had not seen the earlier August 25th email from Mr. Martinez until after receiving the later email from Mr. Zincone, Mr. Rosen replied to Mr. Zincone and immediately asked for an explanation. *Id.* ¶27. Due to the short deadline to file a complaint, Mr. Rosen determined that it would be impracticable to research the allegations of Rule 11 violations in time to file an amended complaint within the deadline. *Id.* ¶28. Therefore Mr. Rosen offered to dismiss the matter without prejudice with each side to bear their own costs. *Id.* ¶29. Notwithstanding this offer, counsel for Defendants filed the instant Motion for an Order to Show Cause a mere hour later. (ECF No. 5).

The Rosen Law Firm has dismissed the action, but Defendants wish to proceed and seek sanctions based on Bar Rules that no longer exist or have been amended, and based on their self-serving denial of Cano Health's allegations of fraud.

III.   **ARGUMENT**

A.   **Defendants Fail to Identify Any Evidence of Client Solicitation**

Defendants claim that "[t]he solicitation of potential class members to join this litigation is prohibited. Full stop." In support of this proposition, they cite R. Reg. Fla. Bar 4-7.4(a), which states that "a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, *in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain*." (Emphasis added by Defendants). Defendants misrepresent the current state of the law. Florida repealed that rule *ten years ago*. R. Reg. Fla. Bar 4-7.4 (stating the rule was deleted by the Supreme Court of Florida January 13, 2013, said deletion effective May 1, 2013). It is unclear why Defendants are seeking sanctions based on a Rule of Professional Conduct that no longer exists and hasn't for a decade. Defendants' reliance on *Hamm v. TBC Corp.*, 345 F. App'x 406, 410 (11th Cir. 2009), is equally misplaced because it was enforcing the now abolished Rule 4-7.4. The current rule regarding direct solicitation is R. Reg. Fla. Bar 4-7.18. That rule specifically allows written solicitation, subject to some restrictions not applicable here. Because Defendants' entire argument is based on citation to an abolished rule, their motion, at minimum, should be rejected.

This distinction is crucial. The United States Supreme Court has disapproved of direct in-

6

person solicitation, because it creates significant potential for an attorney to manipulate potential clients. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 454 , 98 S.Ct. 1912, 1917, 56 L.Ed.2d 444 (1978). The Court has sharply distinguished improper verbal solicitation from written advertisements, which may not be banned consistent with the First Amendment. "[T]he mode of communication makes all the difference". *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 475, 108 S. Ct. 1916, 1922, 100 L. Ed. 2d 475 (1988). The Supreme Court, striking down a ban on text-based advertising, distinguished *Ohralik*, holding that "print advertising generally—poses much less risk of overreaching or undue influence." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 642, 105 S. Ct. 2265, 2277, 85 L. Ed. 2d 652 (1985). In *Zauderer* the Supreme Court overturned the discipline of an attorney who ran an advertisement in 36 Ohio newspapers publicizing the attorney's willingness to represent women who suffered injuries from use of the Dalkon Shield IUD. The advertisement included a drawing of the Shield, and information that the Dalkon Shield:

> is alleged to have caused serious pelvic infections resulting in hospitalizations, tubal damage, infertility, and hysterectomies. It is also alleged to have caused unplanned pregnancies ending in abortions, miscarriages, septic abortions, tubal or ectopic pregnancies, and full-term deliveries. If you or a friend have had a similar experience do not assume it is too late to take legal action against the Shield's manufacturer. Our law firm is presently representing women on such cases. The cases are handled on a contingent fee basis of the amount recovered. If there is no recovery, no legal fees are owed by our clients. *Id.* at 631.

The Supreme Court found that the advertisement was not deceptive and therefore was protected speech under the First Amendment. *Hamm* and *Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981), two cases on which Defendants rely, are inapplicable because they both related to *direct verbal* solicitation.

Defendants also rely on *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104, 101 S. Ct. 2193, 2202, 68 L. Ed. 2d 693 (1981), which notes that a restriction on communications with prospective clients, "involve[s] serious restraints on expression" and that fact "counsels caution on the part of a district court in drafting such an order, and attention to whether the restraint is justified by a likelihood of serious abuses." Defendants point to no abuses committed by The Rosen Law Firm.

Defendants' motion is also fatally flawed because they proffer no evidence that The Rosen Law Firm engaged in any solicitation at all, in writing or verbal. Absent evidence of solicitation, there is no basis to impose sanctions. *Hilton v. Brooks Cnty. Sch. Dist.*, No. 7:20-CV-227 (HL),

2022 WL 4657701, at *7 (M.D. Ga. Sept. 30, 2022) (sanctions are inappropriate where there is "no evidence of improper solicitation"); *see Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (party seeking sanctions for spoliation has burden of proof). The only communications by The Rosen Law Firm that Defendants identify are press releases distributed by national wire services to independent media outlets. Prohibited solicitation under the current ethics rules must be "directed to a specific recipient". R. Reg. Fla. Bar 4-7.18(a)(1). Because the press releases in question were manifestly not directed at a specific recipient, Defendants' motion lacks any colorable basis.

Defendant's erroneous contention that The Rosen Law Firm engaged in *any* improper solicitation is without any basis in fact. The Court should find that The Rosen Law Firm's press releases were not prohibited under the Rules Regulating the Florida Bar.

**B.      Defendants Fail to Show that Rosen Law Firm's Advertising was Misleading or Deceptive**

Defendants claim that The Rosen Law Firm's press releases violate Florida Law because each release fails to "prominently identify itself as" attorney advertising for because it places the disclosure that the press releases are "Attorney Advertising" too far towards the bottom.

As more evidence that Defendants are improperly citing the Rules for which they seek sanctions, the rule Defendants cite, R. Reg. Fla. Bar 4-7.12, does not require a disclaimer that an advertisement be identified as "attorney advertising", but merely that it identifies the lawyer or law firm responsible for the advertisement, and its office location, and, if applicable, information about referrals, which The Rosen Law Firm's press releases complied with. Therefore, even if the press release was not designated as attorney advertising it would still not violate Florida bar rules.

Defendants also claim that the disclosure is "so buried at the end of a digital ad as to be imperceptible" merely because it is at the bottom of the press release. But even as to required information, which the attorney advertising disclaimer is not, the rules only require that it "appears in the same or larger size text and immediately together with the text to be modified", R. Reg. Fla. Bar 4-7.12, which is exactly the case as to the press release's attorney advertising disclosure. Rosen Dec. Ex. 7.

Defendants' additional argument that the draft complaint placed on The Rosen Law Firm's website was advertising that lacked a required disclosure is, like their other arguments, baseless. The complaint was not advertising, but was instead placed on the website to facilitate compliance

with the Private Securities Litigation Reform Act (the "PSLRA"). The PSLRA requires that any "plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint" which must include a statement "that the plaintiff has reviewed the complaint and authorized its filing". 15 U.S. Code § 78u–4(a)(2)(A)(i). Given that requirement, in order to allow plaintiffs to execute a PSLRA certification, The Rosen Law Firm was required to make a draft of the complaint available to prospective plaintiffs. This is also required by the New York Bar, where Mr. Rosen is a member in good standing. Rosen Dec. ¶¶54-61.

Additionally, allegations in a complaint, such as the one posted on the website and ultimately filed, are subject to absolute immunity. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). While the unsigned complaint itself does not identify itself as attorney advertising (because it is not) the website linking to the complaint *is* identified as attorney advertising and is clear to prospective class members that they need not retain The Rosen Law Firm, stating: "No Class Has Been Certified. Until a class is certified, you are not represented by counsel unless you retain one. You may select counsel of your choice. You may also remain an absent class member and do nothing at this point. An investor's ability to share in any potential future recovery is not dependent upon serving as lead plaintiff." Ex. 16. The Middle District of Florida approved the use of attorney advertising that links to a firm's website, so long as the information on the website was not misleading. *Armstrong v. United Servs. Auto. Ass'n*, No. 8:06-CV-1439-T-30TBM, 2006 WL 8440246, at *3 (M.D. Fla. Nov. 9, 2006).

### 1. The Contents of the August 23, 2023 Press Release Were Mandated by Federal Law

Defendants assert that The Rosen Law Firm's August 23, 2023 press release (Rosen Dec. Ex. 14) was misleading for describing the contents of the Complaint filed in this action as they dispute the Complaint's allegations. What Defendants ignore is that the PSLRA mandated the press release include a description of the allegations in the Complaint. The PSLRA requires that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class … of the pendency of the action, the claims asserted therein, and the purported class period". 15 U.S.C. § 78u-4(a)(3)(A). Defendants do not contest that the August 23, 2023 press release accurately describes the

Complaint filed in this action. Therefore, on this basis alone, Defendants' argument lacks merit. The true reason Defendants assert the press release is misleading is its contention that the Complaint's allegations are false, nothing more.

### 2. The Advertisements Were Not Misleading

Because nothing in the press releases was misleading, any sanction against The Rosen Law Firm would be inappropriate. "An attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal rights of potential clients." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 647, 105 S. Ct. 2265, 2279, 85 L. Ed. 2d 652 (1985). It is Defendants' burden to show that the advertisements were *actually* misleading. The bar for defendants is high, and the mere *potential* to mislead does not warrant sanctions. *See Harrell v. Fla. Bar*, 915 F. Supp. 2d 1285, 1305 (M.D. Fla. 2011) (ruling against bar because it failed to provide evidence that advertisements actually deceived anyone). The Rosen Law Firm's initial press releases, filed on August 4, 5 and 17 all make virtually identical, factually accurate claims about Defendants' financial misstatements. Rosen Dec Exs. 7, 12, 13. The releases state that The Rosen Law Firm is investigating "potential securities claims on behalf of shareholders of MSP Recovery Inc… resulting from allegations that MSP Recovery may have issued materially misleading business information to the investing public." *Id*. This statement comes after Defendants announced on April 14, 2023 that the "Audit Committee of the Board of Directors (the 'Audit Committee') of MSP Recovery, Inc., d/b/a LifeWallet (the 'Company'), concluded that the Company's quarterly financial statements for the periods ended June 30, 2022 and September 30, 2022 require restatements and should no longer be relied upon." Rosen Dec. ¶7. MSP issued restated financial statements on July 27, 2023. MSP's restated financial statements constituted an admission that MSP's previous financial statements were false and misleading and were highly specific in the context of Generally Accepted Accounting Principles and SEC and NASDAQ rules.

Generally Accepted Accounting Principles ("GAAP") are those standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices for preparing financial statements. Preparation of financial statements in conformity with GAAP is "an implicit and integral part of management's responsibility." AIPCA, Professional Standards, vol. 1, AU § 110.02 (1998). ("GAAP"). SEC and NASDAQ rules and regulations require that financial statements of publicly traded companies must comply with

GAAP in all respects. See Sections 12 and 13 of the Exchange Act. "Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate." Rule 10-01(d) of Regulation S-X. SEC Rule 4-01(a) of Regulation S-X; 17 C.F.R. § 210.4-01(a)(1). By issuing the Restatement, MSP acknowledged that its financial statements for the restated periods did not comply with GAAP and were therefore false and misleading when issued. *See* 17 C.F.R. § 210.4-01(a)(1).

Restatements are required for "material" accounting errors that existed when financial statements were prepared. *See* SFAS 154. (ASC 250-10). Courts have held that an "announcement of the need to restate its earnings constitutes an admission that its public filings are false." *Kaltman v. Key Energy Servs., Inc.*, 447 F. Supp. 2d 648, 658 (W.D. Tex. 2006); *see also Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1042 (N.D. Cal. 2016); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 138 (S.D.N.Y. 2008); *S.E.C. v. Koenig*, No. 02 C 2180, 2007 WL 1074901, at *4 (N.D. Ill. Apr. 5, 2007); *In re Sonus Networks, Inc. Sec. Litig.*, No. CIV.A.04-10294-DPW, 2006 WL 1308165, at *16 (D. Mass. May 10, 2006) (a restatement is "essentially" a company admission that it misstated revenues and earnings); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 486 (S.D.N.Y. 2004) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."). MSP's restatement is an admission that it issued "materially misleading business information".

Courts have also found that large restatements, like those of MSP (90% overstatement of assets, and 37.4% and 290% understatement of net loss for the two quarters) are also strong evidence of intent to deceive investors. *In re Paincare Holdings Sec. Litig.*, 541 F. Supp. 2d 1283, 1292 (M.D. Fla. 2008), *citing In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 635-36 (E.D. Va. 2000) (scienter allegations adequate where complaint detailed "the magnitude of the restated financials and the pervasiveness and repetitiveness of ... GAAP violations; the simplicity of the accounting principles violated in this case; and the importance of the contracts involved."); *In re Catalina Mktg. Corp. Sec. Litig.*, 390 F. Supp. 2d 1110 (M.D. Fla. 2005) (overstatement of income of 43% supports an inference of scienter); and *Zuckerman v. Smart Choice Auto. Group, Inc.*, 2000 WL 33996254 at *2 (M.D. Fla. Aug. 29, 2000).

In addition, shortly after issuing its restatement, MSP's Chief Financial Officer, Calvin Hamstra, resigned. Rosen Dec. Ex. 3. Courts often recognize such CFO departures as evidence of

the element of scienter in securities fraud actions alleging accounting fraud. *In re Adaptive Broadband Sec. Litig.*, No. C 01-1092 SC, 2002 WL 989478, at \*14 (N.D. Cal. Apr. 2, 2002) (Replacement of defendants including CFO around time of restatement "add[s] one more piece to the scienter puzzle"); *In re Mercator Software, Inc. Sec. Litig.*, 161 F. Supp. 2d 143, 150 (D. Conn. 2001) (firing of CFO on day of restatement supports scienter).

The press releases also state that "[o]n August 1, 2023, after the market closed [MSP Recovery] filed a current report in which it announced, among other things, that on August 11, 2022, the Securities and Exchange Commission (the 'SEC') had initiated an investigation of the Company and its merger with Lionheart Acquisition Corporation II, among other matters, and subpoenaed various documents." Further, the Company announced that it had received a subpoena from federal prosecutors in connection with a grand jury investigation in the U.S. District Court for the Southern District of Florida. On this news, the Company's stock fell 12% on August 2, 2023. This was simply an accurate paraphrase of MSP's own press release (Rosen Dec. Ex. 5), and an accurate description of the subsequent decline in MSP's stock price. Rosen Dec. Ex. 6. It is entirely routine for a law firm to publicize the claims that could potentially be brought against a defendant and the alleged facts underlying those claims. Defense Counsel, MSP Recovery Law Firm, themselves routinely do this on their website. *See, e.g.* https://msprecoverylawfirm.com/roundup/

It was also appropriate for the press releases to refer to The Rosen Law Firm as "trusted" given that multiple courts, in appointing The Rosen Law Firm lead counsel or class counsel, have referred to The Rosen Law Firm as experienced, competent, and qualified. *See, e.g. Sanchez v. Arrival SA*, No. 22-CV-172 (DG), 2022 WL 20539729, at \*5 (E.D.N.Y. Apr. 15, 2022) ("Based on Mostaco's submissions, the Court is satisfied that Mostaco's retained counsel, The Rosen Law Firm, P.A., is experienced, competent, and well-qualified to conduct this class action securities litigation."); *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at \*5 (D.N.J. June 28, 2018) (noting, in appointing the Rosen Law Firm as class counsel, that "The firm has successfully prosecuted many securities class actions"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at \*3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"). It was therefore appropriate to describe The Rosen Law Firm as "trusted".

Because the August 23 press release accurately summarized the allegations in the Complaint already filed by that time in this action, Defendants attack the complaint itself as misleading, specifically for relying on the allegations in Cano's complaint against MSP. This is despite the fact that the proper vehicle for challenging the accuracy of allegations in the complaint is a motion under Rule 11. Their desire to avoid the standards of Rule 11 is unsurprising, because numerous courts have held that it is appropriate under Rule 11 to rely on allegations in an unadjudicated separate complaint to form the basis of a pleading. "[P]ermitting plaintiffs to borrow allegations from [an unadjudicated third party] complaint is warranted" at the pleading stage. *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330, 343 (S.D.N.Y. 2015) (denying motion to strike under Rule 11 where private securities fraud complaint relied on allegations in NYAG complaint); *see also HSH Nordbank AG v. RBS Holdings USA Inc.*, No. 13 CIV. 3303 PGG, 2015 WL 1307189, at *4 (S.D.N.Y. Mar. 23, 2015) (reliance on claims in third party complaint were appropriate because the allegations were "neither extraneous nor immaterial") *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 768 n. 24 (S.D.N.Y. 2012) (permitting plaintiffs to rely on third party complaint that is "replete with detailed factual information of obvious relevance to the case at hand.").

Defendants attack the Complaint's allegation that MSP Recovery "was unable to afford the assigned claims on which it depends; and defrauded a major healthcare provider that sold or assigned it its claims." However, the August 4, 5, and 17 press releases make no mention of Cano or MSP's ability to pay for the claims. This is mentioned only in the August 23 PSLRA mandated press release which concisely and accurately summarizes the allegations in the Complaint, as required by the PSLRA. 15 U.S. Code § 78u–4(a)(2). As an act required in the course of a judicial proceeding, it is subject to absolute immunity under Florida's litigation privilege. "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding … so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994).

The Complaint alleges that several of MSP's public statements, including statements in its Registration Statement and Proxy Statement, were misleading for failing to disclose that MSP was unable to afford the assigned claims that it purchased from third parties. Complaint ¶¶77, 79, 135. Cano Health, in its complaint against MSP, stated that it entered into a series of agreements with MSP from January 19, 2021 through 2023 where it agreed to sell certain claims to MSP.

Rosen Dec. Ex. 29 (herein "Cano Complaint") ¶¶23-45. Cano alleges that MSP induced Cano to assign claims to MSP by representing that 1) MSP had special expertise in securing recoveries on those types of claims, and 2) MSP had access to $41.75 million in cash, or was capable of issuing freely tradeable securities worth the same amount. *Id.* ¶¶ 30, 44. The agreements also required MSP to make quarterly payments. *Id.* ¶46. Cano alleges that MSP failed to make three quarterly installment payments. *Id.* ¶46. In addition, Cano alleges that MSP paid Cano in stock then breached its obligations under the contract because the stock was not freely tradeable. The agreements MSP signed with Cano required MSP to make appropriate filings to register the shares it paid to Cano with the SEC within ten business days of issuing those shares. *Id.* Ex. 9, Sec. 1, Ex. 13. MSP issued shares to Cano on July 16th of 2023. But, as of that time, MSP had failed to issue a 10-K for the year 2022. Therefore, MSP could not file a registration statement with the SEC. *Id.* This caused MSP to breach its agreement with Cano.

While Plaintiff was entitled to rely *solely* on Cano's well pled complaint for these allegations, there was no need to, because Cano included in its complaint a signed letter *from MSP's general counsel* admitting several of these precise facts. Cano Complaint Ex. 13. Plaintiff had ample basis for these allegations. Similarly, because MSP did not disclose these facts in its registration statement or proxy solicitation, Plaintiff had a legitimate basis to claim that "the Registration Statement contained various false or misleading statements and was negligently prepared" and that the "Proxy contained false or misleading statements."

Defendants next argue that the advertisement was misleading for failing to disclose that MSP filed a motion for sham pleading challenging the allegations of the Cano Complaint. Defendants provide no authority for the proposition that, simply because MSP denied that it defrauded its client, that Plaintiff has a duty to disclose that fact or credit those denials. And the sham pleading motion hardly succeeds in undermining the legitimacy of the Cano Complaint's allegations. MSP does not contest that it failed to file a registration statement with the SEC in the time frame specified by the contract, and it does not contest that it failed to make quarterly payments as required by the contract.

Defendants' comparison of the facts here to *Fla. Bar v. Letwin* is nonsensical. There, an attorney was sanctioned for falsely telling prospective class members that "I need to have your express acceptance of my legal representation or the COURT will not recognize your claim." *The Fla. Bar v. Letwin*, 70 So. 3d 578, 580–81 (Fla. 2011). Letwin's false statement that if class

members did not retain her they would lose their respective claims, was just that, a false statement from an attorney to a client for the purpose of retention. Nothing of the sort happened here, quite the opposite, as Defendants know. Here, The Rosen Law Firm's website specifically told investors that they had a choice of attorneys and that they need not retain an attorney at all to remain as a class member and share in any recovery. Rosen Dec. Ex. 16.

Ultimately, Defendants ask the Court to sanction plaintiffs for filing a complaint accusing Defendants of fraud, simply on the basis of Defendants' own self-serving assertion that they "never defrauded anyone." There is no concept in law that provides for sanctions against an attorney based on a defendant saying "I'm innocent." If a Defendant wants to claim that the allegations in a complaint are not true, they should file a motion to dismiss, or answer.

That Defendants seek sanctions against The Rosen Law Firm based on abolished Rules and false claims that Rules have been violated, is disappointing, but not out of the ordinary for them, as this Court noted in a lawsuit brought by affiliates of the Defendants, where they were represented by Messrs. Ruiz and Zincone:

> In light of the ever-shifting allegations Plaintiff has presented in its four versions of its pleading, it is evident Plaintiff has played fast and loose with facts, corporate entities, and adverse judicial rulings. Plaintiff has inexorably been forced to recognize there never existed an MAO with the ability to bring or assign a claim under the MSP Act for recovery of payment of K.N.'s bills. Undeterred, Plaintiff sought to rewrite history with a convoluted story, told by Mr. Keeler and his counsel, that there was an MAO all along that properly assigned those rights. Yet, that is not so. The somewhat careless drafting of documents by lawyers clearly referencing a non-MAO as the assigning entity — HFAP — cannot be cured by attempting post facto to create and dispel an ambiguity that never existed.

*MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, No. 18-21626-CIV, 2018 WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018). This pattern of misconduct has continued in other federal courts. "Plaintiffs' history of untruthfulness is well-documented. … Accordingly, Plaintiffs are warned not to commit fraud on the court, and Plaintiffs' attorneys are reminded of their duty of candor to the Court." *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 619CV00211MADTWD, 2019 WL 4222654, at *7 (N.D.N.Y. Sept. 5, 2019). "Plaintiffs have misrepresented their assignment rights to the Court at least as it relates to Trinity and HFAP based on Plaintiffs' own evidence and as discussed above. Once again, Plaintiffs seemingly "play[ ] fast and loose with facts, corporate entities, and adverse judicial rulings" as other courts have experienced. *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 2018

WL 5112998, at *13 (S.D. Fla. Oct. 19, 2018). "The Court cautions Plaintiffs about the potential consequences of this continued behavior—both as attorneys of law and parties appearing before this Court." *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV1702525ABAFMX, 2021 WL 3615905, at *6 (C.D. Cal. Aug. 12, 2021), *reconsideration denied,* No. CV1702525ABAJWX, 2021 WL 6102913 (C.D. Cal. Nov. 29, 2021), *aff'd,* No. 21-56395, 2023 WL 1793469 (9th Cir. Feb. 7, 2023), and *aff'd,* No. 21-56395, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) (John Ruiz acting as counsel for affiliate of MSP).

### 3.      The Press Releases Contained no Guarantee of Success

Defendants claim that the Press Releases invite prospective clients to make the "leap" of guaranteeing results. What Defendants mischaracterize as promises are accurate descriptions of *past* results. The Rosen Law Firm achieved the largest securities class action settlement against a Chinese company, in *Christine Asia Co. v. Ma*, where the firm secured a settlement of $250,000,000. Ex. 28, p. 11. And The Rosen Law Firm recovered more than $438 million for investors in 2019. Ex. 24, p. 6. The firm was also in fact ranked in the top 4 by Institutional Shareholder Services ("ISS") for total number of securities class action settlements for every year since 2013, and was ranked first in 2017. Rosen Dec. Ex. 22, p. 7. The Florida rules provide examples of statements that could be considered predictions of success: "'I will save your home,' 'I can save your home,' 'I will get you money for your injuries,' and 'Come to me to get acquitted of the charges pending against you.'" R. Regul. FL. Bar 4-7.13. There is no comparison between forbidden guarantees and The Rosen Law Firm's accurate description of past success.  Notably, the Southern District of Florida has found that the Florida Bar's prior guideline banning lawyer advertising of past results in indoor and outdoor display, television, and radio media was unconstitutional and noted that evidence presented before the court showed that evidence of past results was an important factor to consumers looking for an attorney. *Rubenstein v. Fla. Bar*, 72 F. Supp. 3d 1298, 1316 (S.D. Fla. 2014). *Rubenstein* noted "[t]he Bar has presented no evidence to demonstrate that the restrictions it has imposed on the use of past results in attorney advertisement support the interests its Rules were designed to promote." *Id.* at 1315.

In another case, the Northern District of Florida held that an attorney's past results is appropriate attorney advertising because it is information that clients might wish to know. *Searcy v. Fla. Bar*, 140 F. Supp. 3d 1290, 1295–96 (N.D. Fla. 2015). "Courts have generally required the state to present tangible evidence that the commercial speech in question is misleading and

harmful to consumers" before permitting a speech restriction. *Borgner v. Brooks*, 284 F.3d 1204, 1211 (11th Cir. 2002). The Eleventh Circuit rejected the argument that listing a law firm's prior recognition or rating is misleading or inappropriate. *Mason v. Fla. Bar*, 208 F.3d 952, 957 (11th Cir. 2000) ("[C]onsumers need not be familiar with, nor fully understand, Martindale–Hubbell's ratings system in order to find it useful and not misleading. A rating, like certification, 'is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success, but is simply a fact, albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work.'"), *quoting, Peel v. Att'y Registration & Disciplinary Comm'n of Illinois*, 496 U.S. 91, 101, 110 S. Ct. 2281, 2288, 110 L. Ed. 2d 83 (1990).

### 4.      The Press Releases Contained no Improper Comparisons

Defendants claim that the press releases are improper because they include comparisons of lawyers, and Defendants claim that "Rule 4-7.13 … prohibits 'comparisons of lawyers.'" Defendants again misstate the ethics rules. The ethics rules prohibit "comparisons of lawyers or statements, words, or phrases that characterize a lawyer's or law firm's skills, experience, reputation, or record, *unless the characterization is objectively verifiable*". Fla. Bar 4-7.13(b)(3). The comment to this rule explains "[t]he prohibition against comparisons that cannot be factually substantiated would preclude a lawyer from representing that the lawyer or the lawyer's law firm is 'the best,' or 'one of the best,' in a field of law." R. Regul. FL. Bar 4-7.13. The August 4 press release stated that "[o]ften, firms issuing notices do not have comparable experience, resources or any meaningful peer recognition. Many of these firms do not actually litigate securities class actions, but are merely middlemen that refer clients or partner with law firms that actually litigate the cases." Rosen Dec. Ex. 7. These statements are objectively verifiable. As a comparison, anyone who has watched TV in the last few years has heard Florida lawyer John Morgan of Morgan & Morgan state that "size matters."[1]  He is comparing the size of his firm with other, smaller firms, and attempting to convince potential clients that hiring a law firm with more lawyers is better. Although the smaller personal injury law firms and sole practitioners probably don't like that, it is legal and ethical. The same goes for the statements of The Rosen Law Firm.

It is objectively verifiable that some firms do not actually litigate cases but instead rely on

---

[1]  See  https://youtu.be/Y0Ks8gZL45A?si=zE2oR3_fixW9GBpm  See also
https://youtu.be/kVk08J4Ws?si=Ppebv_FiChvL_i92

a business model of obtaining clients and receiving referral fees. This practice is common enough that where a lawyer issues an advertisement with the intent of referring a case, the Florida Bar has required that this fact be disclosed in the advertisement. R. Regul. FL. Bar 4-7.12(b). In the securities class action context, Judge Wolf of the District of Massachusetts recently sanctioned a plaintiff's firm for improper payment to a lawyer who referred a client to the plaintiff's firm but performed no actual work. *Arkansas Tchr. Ret. Sys. V. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 234 (D. Mass. 2020). This shows that the danger The Rosen Law Firm warns of is valid.

5.      **It was Unnecessary to Obtain Pre Approval for the Advertising**

Defendants' allegation that Plaintiffs violated Florida Bar Rules by failing to obtain pre-approval for the press releases again ignores the facts and the Rules. The Rules exempt from pre-approval any press release if "the press release is given only to legitimate media outlets with complete editorial control, including whether to publish any information from the press release where the media outlet is not paid to print information from the press release[.]" Handbook on Lawyer Advertising and Solicitation, The Florida Bar Standing Committee on Advertising, Twelfth Edition, Effective August 21, 2023, p. 2.

In this case, The Rosen Law Firm issued the press releases in question through Businesswire and PR Newswire. Rosen Dec. ¶38. Laurence Rosen spoke with account managers at Businesswire and PR Newswire, and they both confirmed that (i) no portion of the distribution fee paid to the wire services is shared with any media outlets to which it distributes Rosen Law Firm press releases; (ii) when the wire services distribute Rosen Law Firm press releases to the media outlets, these media outlets are under no obligation to publish the press releases; (iii) the media outlets retain full editorial control and may reject the press releases at their discretion; and (iv) many media outlets do reject the press releases and do not run them.  Rosen Dec ¶¶41-42.

However, out of an abundance of caution, on September 6, 2023, to ensure that this exemption applied to The Rosen Law Firm's press releases, The Rosen Law Firm submitted to the Florida Bar the four press releases that MSP identified as violating Florida bar Rules for not being previously submitted to the Florida Bar, along with appropriate payment. Rosen Dec. ¶38. On September 14, 2023, Jonathan Grabb, of the Ethics and Advertising Department of the Florida Bar, emailed Thhe Rosen Law Firm and noted that press releases are exempt from the pre-filing requirement if "the press release is given only to legitimate media outlets with complete editorial control, including whether to publish any information from the press release where the media

18

outlet is not paid to print information from the press release[.]" Rosen Dec. ¶39, Ex. 15.

      **C.**    **The Proposed Relief Defendants Seek is Unwarranted**

      Defendants cite no authority for the proposition that the facts presented here warrant the remedy that Defendants demand: "requiring that the Rosen Law Firm P.A. provide substantial competent evidence that the named Plaintiff in this action was not improperly solicited" and "place appropriate limitations Rosen's representation of other potential plaintiffs in this action." It is MSP's burden to show improper solicitation, and it has not. The *only* case MSP cites where a similar remedy was provided is *Hamm,* where the defendants credibly demonstrated improper solicitation in their motion papers, and while the plaintiffs denied that any solicitation occurred, they admitted that they did directly telephone prospective plaintiffs, though they claimed that it was for due diligence purposes. 345 F. App'x at 410. The court only imposed restrictions on the plaintiffs' firm's ability to represent clients after finding that there were in fact improper solicitations. In this case, Defendants point to no evidence of improper solicitation, and instead demand this Court inquire into plaintiff's attorney client communications solely based on factually accurate advertising.

      Plaintiff has already voluntarily dismissed this action, rendering Defendants' motion moot. Defendants stated that this relief is needed "to place appropriate limitations on Rosen's participation in this case and safeguard against unethical behavior going forward." This case is over, and there was no unethical behavior. *See Armstrong*, 2006 WL 8440246, at *2 (motion for a protective order regarding improper solicitations was moot where Plaintiffs represented they no longer intended to contact prospective clients without pre-approval from Florida Bar). MSP appears to be using this proceeding to bolster its claim that the news reports and evidence are false. This is not the forum to adjudicate whether MSP is guilty of securities fraud or other crimes. Nor is it a forum for Defendants to retaliate against The Rosen Law Firm for the embarrassment Defendants experienced in having allegations against them publicized. "[T]he mere possibility that some members of the population might find advertising embarrassing or offensive cannot justify suppressing it." *Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*, 471 U.S. 626, 647–48, 105 S. Ct. 2265, 2280, 85 L. Ed. 2d 652 (1985).

      The imposition of sanctions is unwarranted. Plaintiff offered to dismiss this action without prejudice, each side to bear its own costs, on August 28, 2023, before Defendants even incurred any costs by filing the instant motion. Defendants' only costs are the costs of the motion, and this

expense was completely unnecessary given Plaintiff had agreed to dismiss the action before Defendants filed it.

> ### D.   Defendants Failed to Confer in Good Faith

Counsel for Defendants contacted The Rosen Law Firm on August 28, 2023, alleging that The Rosen Law Firm violated attorney advertising rules and stated that they would bring the instant motion if The Rosen Law Firm did not agree to dismiss this action. The Rosen Law Firm promptly agreed to dismiss this action without prejudice, with each side to bear their own costs, Despite this, without any discussion or explanation, Defendants responded in an email that they would not agree to this because "they cannot agree to the additional conditions placed upon the dismissal or waive any rights arising from the filing of this action" but never specified what conditions were objectionable. Rosen Dec. Ex. 10. Before waiting for any response, Defendants filed the instant motion.  This failure to confer in good faith and identify conditions on which they would accept voluntary dismissal to resolve the matter warrants denial of the motion.

## IV.   Conclusion

Because (i) The Rosen Law Firm was not required to pre-file its press releases before issuing them and (ii) MSP has not shown any evidence that any of the press releases or its website was false or misleading, or that any improper solicitation occurred, the Court should deny the motion for an Order to Show Cause and vacate the hearing set for November 1.


Dated: October 2, 2023                    **THE ROSEN LAW FIRM, P.A.**

                                          /s/Laurence M. Rosen
                                          Laurence M. Rosen, Esq.,
                                          Fla. Bar No. 0182877
                                          275 Madison Avenue, 40th Floor
                                          New York, New York 10016
                                          Telephone: (212) 686-1060
                                          Fax: (212) 202-3827
                                          Email: lrosen@rosenlegal.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Laurence M. Rosen</u>